```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
   LUZ ALTAGRACIA GERONIMO,                :
                                           :
                          Plaintiff,       :
                                           :      1:13-cv-08263 (ALC)
            -against-                      :
                                           :      OPINION & ORDER
   CAROLYN W. COLVIN, Acting               :
   Commissioner of Social Security,        :
                                           :
                          Defendant.       :
-----------------------------------------------------------x
```

2-20-15

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Luz Altagracia Geronimo ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Defendant Commissioner of Social Security (the "Commissioner") which denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 2) Before the Court are motions for judgment on the pleadings from both parties. For the reasons set forth below, the Commissioner's motion (ECF No. 8.) is denied, and the Plaintiff's cross-motion (ECF No. 11) is granted.

## I. FACTUAL BACKGROUND

### A. Procedural Background

Plaintiff's complaint alleges that she became disabled on November 7, 2010 based on the impairments of low back pain, vertigo, hypertension and obesity. (Compl. ¶¶ 4, 5.) Plaintiff had previously worked as a cleaner and a home health aide, and was 60 years old and living with her daughter and granddaughter in an apartment on the date of alleged disability. (Soc. Sec. Admin.

R. at 32-36 (hereinafter "R. at __").) After Plaintiff's June 17 and July 5, 2011 applications for DIB and SSI, respectively, were denied, Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 18, 2012, and Plaintiff testified at the hearing with the assistance of a Spanish language interpreter. (R. at 32.)

Plaintiff testified that she was five feet and seven inches tall and weighed 185 pounds. (R. at 34.) She completed high school and home health aide training outside of the United States, (R. at 114, 118), and had indicated in a form that her back pain began in 2005, worsened over time, and is triggered by carrying heavy items, sweeping and mopping, and that pain medication only helped sporadically. (R. at 145-47.) Plaintiff testified that she could only stand for five minutes, walk three blocks and lift five pounds or less, and that she has to alternate between sitting and standing because she cannot sit for very long. (R. at 34.) Plaintiff testified that her daughter does the grocery shopping and that she only occasionally cooks. (R. at 35.) She stopped work as a cleaner in 2011 at the direction of her doctor. (R. at 33)

### B. Medical Evidence

Plaintiff received primary care treatment at Centro Medico Dominicano ("CMD") from February 11, 2010, to August 19, 2010. (R. at 195-202, 208-10.) On February 11, 2010, Plaintiff was seen by primary care physician Dr. Rafael Barranco for complaints of lower back pain, left knee pain, and nasal congestion symptoms. (R. at 201-02.) A musculoskeletal examination revealed tenderness over the lumbar spine and left sacroiliac or SI joint. (R. at 201.) Dr. Barranco's assessment was hypertension, unspecified joint pain, osteopenia, allergic rhinitis due to unspecified cause, acid dyspepsia, and glaucoma. (R. at 201.) Dr. Barranco ordered lab work and prescribed Enalapril Maleate and Atenolol for hypertension, Celebrex for joint pain, Fosamax and calcium for osteopenia, Claritin for allergic rhinitis, and Nexium for acid dyspepsia. (R. at 201-02.)

On July 7, 2010, Plaintiff had a follow up with Dr. Barranco due to pain in her left buttock that radiated to her knee. (R. at 199-200.) Examination revealed tenderness over both SI joints and adjacent to the greater trochanter bilaterally, tenderness over the left ankle, mild pretibial and ankle edema bilaterally, and questionable positive straight leg raising bilaterally. (R. at 199.) Dr. Barranco diagnosed Plaintiff with radiculitis edema and referred plaintiff to a neurologist and podiatrist. (R. at 200.) He ordered lab work to further evaluate Plaintiff's joint pain, which came back negative for antinuclear antibody and rheumatoid factor, (R. at 197-98), while the results of additional arthritis tests were acceptable. (R. at 195.) He continued Plaintiff on the same medications (R. at 195-96.)

Plaintiff saw Dr. Barranco for another follow up on December 13, 2010. (R. at 192-94.) She was asymptomatic, except for sporadic arthralgia and dizziness, and Dr. Barranco noted a history of mild fatigue and lassitude and persistent discomfort in the left lower abdominal quadrant "for about two years." (R. at 192.) Examination showed extremities were normal, and musculoskeletal examination revealed no swelling or deformity (R. at 193.) Dr. Barranco assessed hypertension, radiculitis, osteopenia, dyspepsia, cervical dysplasia NOS, glaucoma NOS, dizziness, arthralgias, fatigue, and right lower quadrant abdominal pain. (R. at 193.) Dr. Barranco prescribed Enalapril Maleate and Atenolol for hypertension, Fosamax and calcium for osteopenia, Nexium for dyspepsia, Meclizine for dizziness, and Mobic for arthralgias. (R. at 193.) With regard to fatigue, he noted that thyroid lab results were within the normal range, and he referred Plaintiff to a gastroenterologist for evaluation of her abdominal pain. (R. at 193.)

On March 21, 2011, Plaintiff saw primary care physician Konstantino Zarkadas, M.D. at CMD, for an annual physical and for a follow up after visiting the emergency room for back pain. (R. at 190.) Examination of Plaintiff's back revealed scoliosis with convexity, multiple paired trigger points, and pain with lateral rotation. (R. at 190.) Dr. Zarkadas diagnosed back pain and noted that Plaintiff had a "complete work-up" during her emergency room visit, after which she was diagnosed

with sciatica. (R. at 191.) Dr. Zarkadas referred Plaintiff to physiatrist and to an ophthalmologist. (*Id.*)

On June 10, 2011, plaintiff returned to Dr. Zarkadas for a follow up and he referred her for physical therapy for her back pain and refilled her prescriptions for Nexium and Meclizine. (R. 186-87.) Plaintiff then returned to Dr. Zarkadas for a follow up and medication refills on June 17, 2011. (R. at 186-87.) Musculoskeletal examination revealed no swelling or deformity, and examination of extremities revealed two+ pulses bilaterally and no clubbing, cyanosis, or edema, and neurologic examination revealed that plaintiff was alert and oriented, and cranial nerves II-XII were grossly intact. (R. at 186.) Dr. Zarkadas diagnosed hypertension, low back pain, gastritis, osteoporosis and low risk vertigo, and refilled prescriptions for Atenolol and Enalapril Maleate for hypertension, and started Plaintiff on Mucinex. (R. at 186.)

On August 4, 2011, Dr. Aurelio Salon performed a consultative examination in connection with Plaintiff's SSI and DIB applications. (R. at 170-74.) Plaintiff advised Dr. Salon that she suffered from low back pain radiating to the left lower extremity and began approximately eight years prior, left shoulder and arm pain that began one year ago, dizziness that began five years ago, and generalized headaches that began two weeks ago. (R. at 170-74.) She stated that she experienced dizziness approximately twice per week, most recently five days ago, and that she was hospitalized in 2009 for dizziness. (R. at 170-74.) Plaintiff stated that she went to physical therapy for the first time last month but that she attended only one session because of back pain. (R. at 171.) As regards activities of daily living, Plaintiff stated that her daughter did the cleaning and laundry but that plaintiff was able to cook, shop, shower, and dress herself, and that she spent her time watching television, listening to the radio, and reading. (R. at 172.)

Dr. Salon weighed Plaintiff as 183 pounds, which he deemed "obese," and her blood pressure was 150/88. (R. at 172.) Her gait and stance and hand and finger dexterity were normal,

4

her grip strength was full bilaterally, but Plaintiff declined to walk on her heels and toes, and she squatted to only one-third of full. (R. at 172, 174.) Plaintiff did not need help changing or mounting and dismounting the exam table, and she was able to rise from a chair without difficulty. (R. at 172.) Salon's exam revealed full range of motion of the cervical spine and no scoliosis, kyphosis, or abnormality in the thoracic spine. (R. at 173.) Plaintiff declined to undergo an evaluation of the range of motion of her lumbar spine, but straight leg raising test was negative bilaterally, and her range of motion was full in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (R. at 173.) There was no evidence of cyanosis, clubbing, or edema, and no muscle atrophy based on exam of Plaintiff's extremities. (R. at 174.) Dr. Salon diagnosed hypertension, history of lumbar radiculopathy, history of arthralgias, history of vertigo, history of recent headaches, history of gastritis, history of osteoporosis, and obesity, and opined that there were no objective findings to support restrictions in Plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects. (R. at 174.)

On August 5, 2011, Plaintiff returned to Dr. Zarkadas for a follow up. (R. at 184-85.) On examination, her blood pressure was 140/85, she weighed 192 pounds, and she was not in acute distress. (R. at 184.) She had no musculoskeletal swelling or deformity and no edema in her extremities. (R. at 184.) He assessed hypertension and back pain, and continued Plaintiff on her medications. (R. at 184-85.) He also performed an electrocardiogram, referred Plaintiff to a cardiologist for evaluation of hypertension/chest pain, and advised plaintiff on how to avoid her hypertension and control her diet, weight and stress. (R. at 184-85.)

Plaintiff again saw Dr. Zarkadas on October 14, 2011. (R. at 180-81.)[1] Dr. Zarkadas did not perform a physical examination on that date, but he noted an assessment of back pain and

---

[1] In the interim, on September 19, 2011, Plaintiff saw Dr. Zarkadas in connection with a head cold, cough, fever and sore throat. (R. at 182-83.) Dr. Zarkadas observed erythematous and enlarged tonsils, Dr. Zarkadas

5

refilled Plaintiff's prescriptions. (R. at 180.) Dr. Zarkadas also filled out a form entitled "Medical Assessment of Ability to Do Work - Related Activities (Physical)," which was apparently provided to him by Plaintiff's counsel. (R. at 211-14.) In the form, he stated that Plaintiff could only lift and/or carry less than one pound, (R. at 212), could only stand/walk, sit, climb, stoop, kneel, balance, crouch, or crawl for a total of less than two hours in an eight-hour workday, (R. at 213), and was limited in her ability to perform functions including reaching, feeling, speaking, handling, pushing/pulling, and hearing. (R. at 213.) In the spaces provided on the form to identify the medical findings that supported these assessments, he referred only to "low back pain." (R. at 212-13.) Dr. Zarkadas also opined that Plaintiff's ability to perform work-related activities was adversely affected by heights, chemicals, moving machinery, and temperature extremes, and identified "allergies/lower back pain" as the medical findings which supported of this assessment. (R. at 214.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

This Court's review of the Commissioner's decision is a deferential one, limited to verifying that the correct legal standards were applied and that the decision is supported by "substantial evidence" in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Astrue*, 324 F. App'x 57, 58 (2d Cir. 2009) (summary order) (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence has been defined by the Supreme Court as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" which must be "'more than a mere scintilla.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A plaintiff bears the burden of establishing

---

diagnosed pharyngitis and prescribed Plaintiff Zithromax, Mucinex, and Tylenol. (R. at 182.) Dr. Zarkadas also referred plaintiff to a vascular surgeon for evaluation of varicose veins. (*Id.*)

the existence of a disability with the lack of supporting evidence supporting a denial of benefits. *See Reynolds v. Colvin,* 570 F. App'x 45, 47 (2d Cir. 2014) (summary order) (citing *Talavera,* 697 F.3d at 153).

### B.   Statutory and Regulatory Standards

In order to qualify for Social Security Disability and Supplemental Social Security benefits, a claimant must prove a "disability" under the Act, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A.) A claimant is only considered disabled if their mental and/or physical impairment(s) prevents them from engaging in their prior work and any work that exists in the local and national economy. 42 U.S.C. § 423(d)(2)(A.) The Commissioner evaluates whether an individual is disabled under a five-step sequential process:

> [1] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. [2] If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience. . . . [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. [5] Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.,* 371 F. App'x 109, 111-12 (2d Cir. 2010) (alterations in original) (citations omitted) (quoting *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999)).

In this case, in his June 6, 2012 decision, ALJ Michael Friedman ("ALJ Friedman") found at step one that Plaintiff did not engage in substantial gainful activity since November 7, 2010. (R. at 15.) At steps two and three, ALJ Friedman found that Plaintiff had severe impairments including low back pain and obesity but, after analyzing the listing related to spinal disorders, that these impairments, singly or in combination, do not meet or medically equal a listing. (R. at 15-17.) At steps four and five, the ALJ found that Plaintiff possessed the residual functional capacity to perform the full range of medium work, which involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds and that she was capable of performing her past relevant work as a home-health aide. (R. at 17-19.) Plaintiff primarily argues here that the ALJ erred at these latter two steps by giving inappropriate weight to the opinions of Drs. Zarkadas and Salon.

### III. DISCUSSION

As a general rule, a treating source's opinion on the nature and severity of an individual's impairment is given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) (citing *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)). Thus, even where a claimant is represented by counsel or a paralegal, an ALJ is under a duty to seek additional evidence or clarification

when the "if a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010); *see also Rosa*, 168 F.3d at 79 (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). The rationale behind this rule is that "a treating physician's 'failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa*, 168 F.3d at 80 (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

In *Rosa v. Callahan*, 168 F.3d 172 (2d Cir. 1999), the Second Circuit applied these rules in vacating an ALJ's decision and remanding the action for further proceedings. In *Rosa*, the treating physician submitted only a one-page, "wholly conclusory" assessment finding the claimant was incapable of doing any work requiring even minimal lifting or carry or sitting or standing for more than one to two hours during the course of an eight-hour work day. *Id.* at 75, 80. The ALJ rejected this assessment, emphasizing that the treating physician "did not report findings of muscle spasm to corroborate any loss of motion." *Id.* at 79. In reversing, the Second Circuit noted that the ALJ erred in placing such significance to this omission without taking steps to have the physician supplement his findings with additional information, especially given that the claimant's testimony suggested that there might be additional medical records which were not in the record. *Id.* at 79-80; *see also Calzada*, 753 F. Supp. 2d at 278 (reversing ALJ decision because "ALJ committed legal error in failing [to] develop the record or seek clarification of the treating physicians' assessments before dismissing them as inadequately support by the clinical findings"); *cf. Baladi v. Barnhart*, 33 F. App'x. 562, 564 (2d Cir. 2002)

(holding that ALJ did not err in according non-controlling weight to treating physician's opinion because he requested additional reports from the treating physician).

Applying the treating physician rule, and *Rosa* in particular, to this case, the Court holds that ALJ Friedman erred in affording "little weight" to the opinion of treating physician Dr. Konstantinos Zarkadas. Similar to the treating physician's opinion in *Rosa*, Dr. Zarkadas's three-page assessment is wholly conclusory, and merely cites to "allergies and "low back pain" as support for his determination that Plaintiff is unable to lift more than one pound, stand, walk or sit for more than two hours without interruption, in addition to other postural and physical function limitations. (R. at 212-13.) Further, like the ALJ in *Rosa*, ALJ Friedman based his decision not to afford controlling weight to the treating physician's opinion here on Dr. Zarkadas's failure to identify supportive tests or other clinical findings:

> Dr. Zarkadas based his opinion on the low back pain, but he did not identify the clinical findings to support this. Likewise, Dr. Zarkadas stated that the claimant had limitations in walking, standing, and sitting, as well as postural limitations, yet he attributed them to the low back pain and did not identify clinical findings. The record had no imaging test to support the presence of a back impairment and no [electromyography] or other test consistent with radiculitis.

(R. at 19.) Finally, as in *Rosa*, the record suggests that there may in fact be support for Dr. Zarkadas's opinion outside of the present record. Specifically, Dr. Zarkadas's notes from March 21, 2011 indicate that Plaintiff had a "complete workup" during her emergency room visit for back pain and was diagnosed with sciatica (R. at 190-91), but any records from this visit are not in the record.

ALJ Friedman's decision and the Commissioner's motion both presume that Dr. Zarkadas's failure to identify supportive findings is due to his sole reliance on Plaintiff's subjective complaints as the foundation for his opinion. While that might ultimately be true,

10

drawing such an inference would undercut the very principles underlying an ALJ's duties to develop the record and to pay deference to the opinions of treating physicians. Simply put, "[i]t is entirely possible that Dr. [Zarkadas], if asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis of complete disability." *Rosa*, 168 F.3d at 80 (internal quotation marks omitted). A remand is necessary to afford Dr. Zarkadas the opportunity to provide such an explanation.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** the Plaintiff's Motion (ECF No. 11) is **GRANTED** and the Commissioner's Motion (ECF No. 8) is **DENIED**; and it is

**FURTHER ORDERED** that the Commissioner's final decision denying Plaintiff's application for SSI and DIB is **VACATED** and that this action is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

The Clerk of Court is respectfully directed to enter a judgment for Plaintiff consistent with Opinion & Order and to close this case.

**SO ORDERED.**

Dated: February 20, 2015
      **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**